2017 IL App (3d) 160382

Opinion filed May 4, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| OSVALDO H. WESLY, M.D., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| THE NATIONAL HEMOPHILIA | ) | |
| FOUNDATION; CRAIG M. KESSLER, M.D.; | ) | |
| GEORGETOWN UNIVERSITY; MICHAEL | ) | |
| TARANTINO, M.D.; KOLLET KOULIANOS; | ) | |
| THE BLEEDING AND CLOTTING | ) | Appeal No. 3-16-0382 |
| DISORDERS INSTITUTE, an Illinois | ) | Circuit No. 15-L-188 |
| Not-For-Profit Corporation; BOB ROBINSON; | ) | |
| BLEEDING DISORDERS ALLIANCE | ) | |
| ILLINOIS, an Illinois Not-For-Profit | ) | |
| Corporation; DANIELLE BAXTER; GREAT | ) | |
| LAKES HEMOPHILIA FOUNDATION, INC., | ) | |
| a Wisconsin Corporation; and KATHRYN | ) | |
| REESE-KOSSOW, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Stephen A. Kouri, |
| (Georgetown University, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices Carter and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1        On September 18, 2015, the plaintiff, Osvaldo H. Wesly, M.D., filed a defamation action against Craig M. Kessler, M.D., and Georgetown University, together with various other defendants, including the National Hemophilia Foundation, Michael Tarantino, M.D., Kollet Koulianos, the Bleeding and Clotting Disorders Institute, an Illinois not-for-profit corporation, Bob Robinson, Bleeding Disorders Alliance Illinois, an Illinois not-for-profit corporation, Danielle Baxter, Great Lakes Hemophilia Foundation, Inc., a Wisconsin corporation, and Kathryn Reese-Kossow.

¶ 2        On December 8, 2015, Georgetown University filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2-301 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2014)). On June 9, 2016, the trial court issued an order denying Georgetown University's motion to dismiss based on lack of personal jurisdiction. Georgetown University appeals this ruling.

¶ 3                                    FACTS

¶ 4        On September 18, 2015, the plaintiff, Osvaldo H. Wesly, M.D. (plaintiff), filed the complaint in this matter against various defendants, including Georgetown University (Georgetown) and Craig M. Kessler, M.D. (Dr. Kessler), an unpaid faculty member at Georgetown, alleging that Georgetown and Dr. Kessler made false and defamatory statements regarding plaintiff. According to the complaint, on September 20, 2014, the National Hemophilia Foundation (the NHF) presented plaintiff with the 2014 physician of the year award at an awards ceremony. After receiving this award, the complaint alleges the defendants communicated false

and defamatory statements to the NHF regarding plaintiff's qualifications to receive the prestigious award.

¶ 5      In particular, plaintiff alleges the defendants falsely informed the NHF that plaintiff "lacked the credentials necessary to hold the [a]ward, and that documents submitted to the [NHF] contained significant inaccuracies relating to [plaintiff's] background, qualifications, and experience." The complaint also alleges that on September 22, 2014, the NHF disseminated the same false and defamatory statements regarding plaintiff by email to the NHF's members and others. In addition, plaintiff claims the NHF publically posted similar false and defamatory statements regarding plaintiff to the NHF website. Plaintiff attached a copy of the posting contained on the NHF's website to his complaint, which stated

> "The National Hemophilia Foundation has just become aware that documents submitted to it in connection with its 2014 NHF Physician of the Year Award to Dr. Osvaldo H. Wesly had significant inaccuracies relating to Dr. Wesly's background, qualifications, and experience. NHF is continuing to investigate the situation and, depending on the completed results, may take action, including if warranted, a revocation of the award. In any event, NHF is committed to taking all appropriate steps to insure that such a situation does not occur in the future and that the nomination process will be one of the highest integrity."

¶ 6      Count I of the complaint is directed against Georgetown. In that count, plaintiff alleges that Georgetown is responsible for the alleged defamatory statements Dr. Kessler made as an agent of Georgetown.

¶ 7      On December 8, 2015, Georgetown filed a motion to dismiss count I of the complaint pursuant to section 2-301 of the Code (735 ILCS 5/2-301 (West 2014)) for lack of personal

jurisdiction.[1] Georgetown argued plaintiff's complaint did not include sufficient allegations allowing the court to exercise personal jurisdiction over the university on several grounds. First, Georgetown argued that the university could not be subject to general jurisdiction under subsection (b)(4) of section 2-209 of the Code (735 ILCS 5/2-209 (West 2014)) because the complaint did not allege Georgetown was "doing business" in the state. 735 ILCS 5/2-209(b)(4) (West 2014). Second, Georgetown asserted Dr. Kessler was not acting as an agent of the university at the time he communicated the alleged defamatory statements, which is necessary to give rise to specific jurisdiction over the university. 735 ILCS 5/2-209(a)(2) (West 2014). Lastly, Georgetown argued that it did not have sufficient contacts with Illinois to satisfy due process requirements.

¶ 8        Georgetown submitted two affidavits in support of the motion to dismiss. One affidavit was prepared by Jose Madrid (Madrid), a litigation manager in Georgetown's office of vice president and general counsel. Madrid's affidavit stated that Georgetown is a private university with campuses located in Washington, D.C. Georgetown does not have a campus or an office in Illinois, is not registered to do business in Illinois, and does not maintain an agent for service of process in Illinois. Additionally, Georgetown is not registered as a charitable organization in Illinois. Georgetown currently employs 6000 employees, and only one employee has a primary work address within the state of Illinois. According to Madrid's affidavit, Dr. Kessler holds an unpaid faculty appointment with Georgetown and is not on Georgetown's payroll. Georgetown has not made any payments to Dr. Kessler for his services.

---

[1]Georgetown also moved to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), arguing that plaintiff's allegations against Georgetown do not meet the heightened pleading standard applicable to defamation *per se* cases. Further, Georgetown argued that plaintiff's request for punitive damages must be stricken because plaintiff had not sufficiently alleged malice to support his request for punitive damages. Georgetown did not raise these issues on appeal.

¶ 9        Georgetown also attached Dr. Kessler's affidavit to the motion to dismiss. Dr. Kessler stated that he is a board-certified physician in internal medicine and hematology. According to this affidavit, Dr. Kessler is employed as a full-time salaried hematologist/oncologist at MedStar-Georgetown Medical Center, Inc., d/b/a Georgetown University Hospital (MedStar) in Washington, D.C.[2] Dr. Kessler also holds an unpaid faculty appointment with Georgetown, serving as the professor of medicine, pathology, and oncology at Vincent Lombardi Comprehensive Cancer Center, which is part of Georgetown University Hospital. Dr. Kessler is also the director of the coagulation laboratory at Georgetown. According to Dr. Kessler's affidavit, he is paid by Medstar and does not receive any compensation from Georgetown.

¶ 10       Dr. Kessler stated that in his capacity as a board-certified hematologist, he has worked as an unpaid volunteer for the NHF. Dr. Kessler stated that all of his work for the NHF has been separate and independent from his unpaid faculty appointment with Georgetown. Dr. Kessler stated that Georgetown has not directed or exercised any control over the manner or method in which he performed his volunteer work for the NHF. Finally, Dr. Kessler stated the allegations in the complaint are incorrect; however, he claims that even if he had committed such actions, he would not have done so in his capacity as an unpaid faculty member with Georgetown.

¶ 11       Plaintiff submitted his own affidavit in support of his response to Georgetown's motion to dismiss. In the affidavit, plaintiff stated that he is a practicing physician in Illinois and was the medical director of the Comprehensive Bleeding Disorders Center (CBDC), a nonprofit organization devoted to treating children and adults with bleeding and clotting disorders. CBDC is based in Peoria, Illinois, and has locations throughout the state. Plaintiff claims that since the filing of the complaint in this case and as a result of the defamatory statements made by the

_____

[2]According to Madrid's affidavit, MedStar owns and operates Georgetown University Hospital.

defendants, CBDC terminated plaintiff's position as medical director of CBDC on March 4, 2016.

¶ 12        Plaintiff also attached over 50 pages of unverified exhibits, without a supporting affidavit, to his response in opposition to the motion to dismiss.[3] These exhibits consist of information downloaded from various websites regarding Georgetown's recruiting and fundraising efforts in Illinois. The exhibits show that for the class of 2016, Georgetown had 691 applicants and 48 admitted students from Illinois. In 2015, Georgetown's office of undergraduate admissions made visits to Chicago and Champaign, Illinois, to recruit applicants. Generally, all first-year applicants to Georgetown's undergraduate program are required to be interviewed in Illinois by a local alumnus as a part of the admissions process. Georgetown also has an alumni club located in Chicago, Illinois. Georgetown regularly holds recruiting and alumni events in Illinois in relation to its business and law schools. In addition, Georgetown relies upon the fundraising efforts of the university's Illinois alumni. For example, in 2013, Georgetown issued a press release indicating that a larger proportion of Chicago alumni donated funds in a one-day fundraising effort than any of Georgetown's other six largest domestic undergraduate markets.

¶ 13        Plaintiff also attached an exhibit containing a portion of Georgetown's faculty handbook. According to Georgetown's faculty handbook, the university encourages its faculty members to engage in service to their profession, including teaching and research activities, and service to the public. Georgetown also encourages its faculty members to participate in important professional and educational associations and societies in their respective fields. The quality and

---

[3]Illinois Supreme Court Rule 191(a) requires that affidavits submitted in connection with a motion to contest personal jurisdiction under section 2-301 of the Code "have attached thereto sworn or certified copies of all documents upon which the affiant relies." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). However, Georgetown has not objected to the foundation for these exhibits.

6

quantity of a faculty member's service is considered in evaluating a faculty member. In regards to faculty members' participation in scholarly activities, the handbook states:

> "Occasional participation in traditional scholarly activities such as, but not limited to, service on study sections and review panels, delivery of academic seminars, the review, presentation or writing of scholarly papers, and service on editorial boards is considered part of the routine academic duty of faculty members. No advance review is required for activities of this type so long as they do not conflict with other faculty duties."

In addition, plaintiff submitted additional exhibits for the trial court's consideration that documented Dr. Kessler spoke about his affiliation with Georgetown University during various speaking engagements and mentioned his status as an editor of a scientific journal on various websites.

¶ 14  After Georgetown's motion to dismiss was fully briefed, the trial court received arguments from the parties but did not conduct an evidentiary hearing. On June 9, 2016, the trial court entered an order summarily denying Georgetown's motion to dismiss. The court order did not include any factual findings or provide the court's rationale for denying Georgetown's motion to dismiss for lack of personal jurisdiction.

¶ 15                                    ANALYSIS

¶ 16  In this appeal, Georgetown, a nonresident of this state, contends the Illinois long-arm statute does not give rise to either general or specific jurisdiction over Georgetown based on the facts alleged in the complaint and the affidavits submitted by the parties. Additionally,

Georgetown asserts that the exercise of personal jurisdiction over the university violates due process.

¶ 17    Conversely, plaintiff argues that Georgetown is subject to general jurisdiction under the long-arm statute due to the university's continuous and systematic business contacts in the state. Alternatively, plaintiff submits that even if Georgetown did not maintain continuous and systematic business contacts with this state, Georgetown is subject to specific jurisdiction in this case because Georgetown's agent, Dr. Kessler, "purposefully directed" his conduct at plaintiff, who resided in Illinois, and plaintiff's injuries arise out of Georgetown's Illinois-related activities.

¶ 18    The Illinois long-arm statute governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant such as Georgetown. 735 ILCS 5/2-209 (West 2014); *Russell v. SNFA*, 2013 IL 113909, ¶ 29. The parties focus on subsections (a) and (b) of the long-arm statute for purposes of this appeal. Subsection (a) contains provisions pertaining to specific jurisdiction, whereas subsection (b) contains provisions pertaining to general jurisdiction. 735 ILCS 5/2-209(a), (b) (West 2014). Subsection (c) of the long-arm statute is not at issue. 735 ILCS 5/2-209(c) (West 2014).

¶ 19    Traditionally, Illinois courts have applied a two-part test to decide jurisdictional issues under the long-arm statute, "first determining whether a specific statutory provision of section 2-209 has been satisfied, and then determining whether the due process requirements of the United States and Illinois Constitutions have been met." *Russell*, 2013 IL 113909, ¶ 29.

¶ 20    A party who objects to the court's personal jurisdiction may file a motion to dismiss for lack of jurisdiction pursuant to section 2-301 of the Code (735 ILCS 5/2-301 (West 2014)). "The plaintiff bears the burden of making a *prima facie* showing that the trial court has personal

jurisdiction over a nonresident defendant." *McNally v. Morrison*, 408 Ill. App. 3d 248, 254 (2011). "A defendant's uncontradicted evidence that defeats jurisdiction can overcome a plaintiff's *prima facie* showing." *McNally*, 408 Ill. App. 3d at 254.

¶ 21    In this case, the trial court determined personal jurisdiction solely on the basis of documentary evidence and without an evidentiary hearing. Consequently, the case law provides that our standard of review on the issue of personal jurisdiction is *de novo*. *Russell*, 2013 IL 113909, ¶ 28.

¶ 22    We address both general and specific personal jurisdiction separately below.

¶ 23                                I. General Jurisdiction

¶ 24    On appeal, Georgetown asserts that the trial court does not have general jurisdiction over the university because it was not "doing business" in the state of Illinois, as required for general jurisdiction to attach. General jurisdiction is governed by subsection (b) of section 2-209, which provides four bases in which an Illinois court has general jurisdiction over a defendant. 735 ILCS 5/2-209(b) (West 2014). Subsection (b)(4) of section 2-209 confers general jurisdiction over a defendant "doing business" in the state, regardless of whether the cause of action arises within Illinois. 735 ILCS 5/2-209(b)(4) (West 2014).

¶ 25    The "doing business" requirement under subsection (b)(4) of the long-arm statute is a very demanding standard for a plaintiff to meet. Since a bright-line test does not exist to determine whether general jurisdiction exists pursuant to section 2-209(b)(4) of the Illinois long-arm statute, "[c]ourts must make a case-by-case determination on the unique facts presented when deciding whether a corporation's activities are sufficiently permanent and continuous" to satisfy the standard. *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 54 (2001).

9

¶ 26       Existing case law "requires the nonresident corporation's business activity in Illinois to be carried on, not casually or occasionally, but with a fair measure of permanence and continuity." *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 31. This requirement means that in effect, "the foreign corporation has taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois." (Internal quotation marks omitted.) *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 953 (2010).

¶ 27       The United States Supreme Court held in *Daimler AG v. Bauman* that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler AG v. Bauman*, 571 U.S. at ___, ___ n.20, 134 S. Ct. 746, 762 n.20 (2014). *Daimler* established that a corporate defendant is subject to general jurisdiction only where the corporation's place of incorporation or principal place of business is located, except in the most "exceptional" cases. *Id.*, 571 U.S. at ___ n.19, 134 S. Ct. at 761 n.19.

¶ 28       While the issue involving general jurisdiction pertaining to an out-of-state university is one of first impression for this court, other jurisdictions have had the opportunity to address this issue. Where an out-of-state educational institution contacts new students and directs efforts to raise funds from former students (alumni) residing in another state, courts have held that such activities do not create general jurisdiction in the other state. See *e.g.*, *Thackurdeen v. Duke University*, 130 F. Supp. 3d 792, 799-800 (S.D.N.Y. 2015) ("a university or college cannot be deemed 'at home' in a forum merely because it engages in the sort of minimal and sporadic contact with the state that is common to all national universities"), *aff'd*, 660 F. App'x 43 (2d Cir. 2016); *American University System, Inc. v. American University*, 858 F. Supp. 2d 705, 713-14 (N.D. Tex. 2012) ("In similar cases involving the issue of personal jurisdiction over an out-of-

state educational institution, courts have unanimously determined that the institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university."); *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985) ("Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment.").

¶ 29     As stated above, the plaintiff bears the burden of making a *prima facie* showing that the trial court has personal jurisdiction over this particular nonresident defendant. *McNally*, 408 Ill. App. 3d at 254. The record shows Georgetown is a private university located in Washington, D.C. The university both recruits and educates students from the state of Illinois. However, these students must travel to Washington, D.C., in order to receive their education. The university has no campuses or offices located in the state of Illinois. Georgetown currently has approximately 6000 employees, and only one of those employees has a primary work address in Illinois.

¶ 30     Based on the facts set forth in the pleadings and the affidavits, we reject the notion that this is an "exceptional case" where the nonresident university's contacts with the state of Illinois qualify as the type of systematic and continuous operations rendering Georgetown essentially "at home" in the state of Illinois for purposes of general personal jurisdiction based on general business activities. See *Daimler*, 571 U.S. at ___, n.19, 134 S. Ct. at 761 n.19.

¶ 31                                    II. Specific Jurisdiction

¶ 32        Next, we address Georgetown's argument that specific jurisdiction does not exist in this

case. Subsection (a)(2) allows for specific jurisdiction where the cause of action arises out of the

commission of a tortious act within the state. 735 ILCS 5/2-209(a)(2) (West 2014).[4]

¶ 33        Specific personal jurisdiction exists where (1) the defendant has purposefully directed his

activities at residents of the forum and (2) the litigation results from alleged injuries that arise out

of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In

*Walden v. Fiore*, the United States Supreme Court emphasized that "[t]he proper question is not

where the plaintiff experienced a particular injury or effect but whether the defendant's conduct

connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. ___, ___,134 S. Ct.

1115, 1125 (2014). The court asserted that "the plaintiff cannot be the only link between the

defendant and the forum"; rather, it "is the defendant's conduct that must form the necessary

connection with the forum State that is the basis for its jurisdiction over him." *Id.*, 571 U.S. at

___, 134 S. Ct. at 1122.

¶ 34        Therefore, we examine whether Georgetown's conduct created the necessary connection

in this state to generate specific jurisdiction. "Under the doctrine of *respondeat superior*, a

principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury,

even if the principal does not himself engage in any conduct in relation to the plaintiff." *Woods

v. Cole*, 181 Ill. 2d 512, 517 (1998). However, a principal can only be held liable for those acts

committed by an agent acting within the scope of his agency. *Lang v. Silva*, 306 Ill. App. 3d 960,

---

[4]On appeal, plaintiff cites subsection (a)(1) of the long-arm statute as a basis for specific jurisdiction. 735 ILCS 5/2-209(a)(1) (West 2014). However, plaintiff has not argued that this cause of action arose out of Georgetown's transaction of business in the state of Illinois. Consequently, plaintiff forfeited any argument for specific jurisdiction pursuant to subsection (a)(1) of the long-arm statute. See *Wolfe v. Menard, Inc*., 364 Ill. App. 3d 338, 348 (2006) (a party "must argue the points that he or she raises, or they are waived. [Citation.] A conclusory assertion, without supporting analysis, is not enough.") .

972 (1999). In *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 210 (2003), the court observed that the right to control the actions of another is the hallmark of agency.

¶ 35 To determine whether an agent's tortious acts were committed within the scope of employment with the principal, Illinois courts look to the Second Restatement of Agency for guidance. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 164 (2007). The Restatement provides, in relevant part:

"(1) Conduct of servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master ***[.]

***

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958).

Ultimately, "[w]hether an employee was acting within the course of the employment depends on the employment contract and the nature of the relationship, which must exist at the time of and in respect to the particular facts out of which the injury arose." *Bagent*, 224 Ill. 2d at 165.

¶ 36 Generally, the existence of an agency relationship is a question reserved to the trier of fact, but "it is an issue of law where the facts relating to the relationship are undisputed or no

13

liability exists as a matter of law." *Krickl v. Girl Scouts, Illinois Crossroads Council, Inc.*, 402 Ill. App. 3d 1, 5 (2010). However, if no reasonable person could conclude that an employee was acting within the scope of employment, a court may hold that the employee was not acting so as a matter of law. *Bagent*, 224 Ill. 2d at 165.

¶ 37    In this case, plaintiff's defamation complaint includes a broad allegation stating Dr. Kessler acted as an agent of Georgetown when he communicated information about plaintiff's qualifications to receive a prestigious award from the NHF. To rebut this allegation concerning the issue of whether Georgetown had control over Dr. Kessler's conduct as a volunteer for the NHF, Georgetown submitted two affidavits in support of the university's motion to dismiss for lack of personal jurisdiction.

¶ 38    Specifically, the affidavits prepared by Madrid and Dr. Kessler indicate Dr. Kessler's volunteer work with the NHF is separate and independent from Dr. Kessler's unpaid faculty position with Georgetown. In addition, both affidavits address the issue of control and establish that Georgetown does not have the ability to direct or control Dr. Kessler's volunteer work with the NHF.

¶ 39    Once Georgetown submitted these affidavits to rebut plaintiff's conclusory allegations concerning agency, plaintiff had the burden to come forward with a counteraffidavit or other documentation supporting the exercise of personal jurisdiction. See *McNally*, 408 Ill. App. 3d at 254. It is well established that when "a defendant's affidavit contesting jurisdiction is not refuted by a counteraffidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are accepted as true." *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248 (1981).

¶ 40    On appeal, plaintiff emphasizes that Dr. Kessler regularly identified himself as affiliated with Georgetown during speaking engagements and on various websites and dispatched the

14

alleged defamatory emails to others while using his official Georgetown email address. We construe these assertions as an attempt to link Dr. Kessler's comments to Georgetown based on some form of apparent authority. While plaintiff relies on Dr. Kessler's conduct to support this argument, "[o]nly the alleged principal's words and conduct, not those of the alleged agent, establish the agent's authority." *Kaporovskiy*, 338 Ill. App. 3d at 210; see also *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 461 (1986) ("The agent's authority must be derived from some act or statement of the *principal*." (Emphasis in original.)).

¶ 41    The rationale behind the doctrine of apparent authority is that "[t]he principal, having created the appearance of authority, is estopped to deny it to the detriment of a third party." *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 432 (1991). Plaintiff has not pointed out any conduct by Georgetown, acting as principal, that would give rise to Dr. Kessler's authority to act as an agent of Georgetown when serving the NHF. While Georgetown identifies Dr. Kessler as faculty, there is no mention of the NHF in the faculty profile or other materials generated by the educational institution.

¶ 42    In particular, plaintiff has not shown that Georgetown, through its words and conduct, created the appearance that Georgetown authorized Dr. Kessler to perform acts for the NHF on Georgetown's behalf. For these reasons, we conclude plaintiff failed to present sufficient evidence to rebut Georgetown's affidavits showing that Dr. Kessler was not acting as an agent of Georgetown at the time he communicated his personal views to the NHF.

¶ 43    For the foregoing reasons, we reverse the trial court's June 9, 2016, order denying Georgetown's motion to dismiss for lack of personal jurisdiction. In light of our holding that plaintiff has not established a *prima facie* case for exercising personal jurisdiction over

15

Georgetown, we need not address the parties' remaining due process arguments. *Cleary v. Philip Morris, Inc.*, 312 Ill. App. 3d 406, 408 (2000).

¶ 44                                                          CONCLUSION

¶ 45            The judgment of the trial court of Peoria County is reversed.

¶ 46            Judgment reversed.