2020 IL App (1st) 192550-U

FIRST DISTRICT,
FIRST DIVISION
September 30, 2020

No. 1-19-2550

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL JOVANOVICH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 19 L 8785 |
| INDIANA HARBOR BELT RAILROAD | ) | |
| COMPANY, | ) | Honorable |
| | ) | Moira S. Johnson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Railroad employee sued railroad, an Indiana corporation, for injuries sustained while on the job in Indiana.  Railroad moved to dismiss for lack of personal jurisdiction in Illinois, and, when its motion was denied, filed the present permissive interlocutory appeal.  We reversed, finding that (1) plaintiff's injury did not arise out of railroad's activities in Illinois, and (2) Illinois could not exercise general jurisdiction over corporation that was neither incorporated nor had its principal place of business in Illinois.

¶ 2    Plaintiff Michael Jovanovich, an employee of defendant Indiana Harbor Belt Railroad

Company (IHB), was injured on the job.  Alleging negligence, Jovanovich brought suit against

IHB in the circuit court of Cook County, Illinois. IHB moved to dismiss for lack of personal jurisdiction. The trial court denied IHB's motion. Although it found that Illinois lacked general personal jurisdiction over IHB, it also found that Illinois could exercise specific personal jurisdiction based on the facts of Jovanovich's claim.

¶ 3    We granted IHB's petition for leave to file an interlocutory appeal pursuant to Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2019). For the reasons that follow, we find that Illinois lacks both general and specific jurisdiction over IHB and reverse.

¶ 4                                    BACKGROUND

¶ 5    IHB is an Indiana corporation with its corporate headquarters in Indiana; it operates in northwest Indiana and the Chicagoland area. Jovanovich was employed by IHB as a conductor. On September 18, 2018, at around 9:45 p.m., he was working at a facility (the Savage facility) in Hammond, Indiana, operated by one of IHB's customers, Savage Services. According to Jovanovich's complaint, he was between two railcars, coupling them and connecting the air brake hoses while in radio communication with engineer Kenneth Williams. When Williams moved the cars in reverse, Jovanovich was knocked over and his leg and hand were severed.

¶ 6    Jovanovich sued IHB in the circuit court of Cook County, asserting a claim under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51). He alleged that IHB was negligent in moving the rail cars when it was not safe to do so, failing to properly illuminate the rail yard, and providing defective radios to employees.

¶ 7    IHB moved to dismiss for lack of personal jurisdiction. IHB argued that Illinois lacked general personal jurisdiction because, although IHB maintained track and facilities in Illinois, its affiliations with the state were not "so continuous and systematic as to render [it] essentially at home" in Illinois. (Internal quotation marks omitted.) *Daimler AG v. Bauman*, 571 U.S. 117,

139 (2014). IHB additionally argued that Illinois could not assert specific personal jurisdiction in connection with Jovanovich's claim, since all activities and operations related to the incident took place in Indiana, and "[n]o event related to the incident occurred in Illinois."

¶ 8    In his response, Jovanovich argued that IHB has "extensive" ties to Illinois, alleging that a majority of IHB's operations are in Illinois and that "IHB's primary operations are centered out of its Blue Island Yard in Riverdale, IL." Additionally, Jovanovich alleged, as a basis for specific jurisdiction, that "IHB's negligent training, testing, and certification of engineer Ken Williams occurred in Illinois."

¶ 9    The record reflects that on the day of Jovanovich's accident, he was working "the 122 Job" with Williams and switchman Robert Hodges. The 122 Job is responsible for transferring railcars between the Savage facility in Hammond, Indiana, and the Michigan Avenue Yard (MAV Yard) in East Chicago, Indiana. Zachary Bryan, the terminal superintendent of IHB's Gibson Yard in Hammond, Indiana, submitted an affidavit stating that no part of the 122 Job takes place within Illinois, since the route between the Savage facility and the MAV Yard runs exclusively through Indiana. He explained that once the 122 Job delivers cars to the MAV Yard, other crews deliver the cars to their eventual destinations. Michael Kapitan, IHB's director of risk management, submitted an affidavit corroborating Bryan's statement that the 122 Job operates solely within Indiana.

¶ 10    In response, Jovanovich submitted materially identical affidavits from Hilary Manoski and Justin Wolters. Manoski and Wolters stated they were employed by IHB for "many years" and had worked the 122 Job "many times." They averred that outbound cars from Savage handled by the 122 Job are referred to as "Blues" because they are eventually "destined for" the Blue Island Yard in Illinois.

¶ 11     As noted, Jovanovich's accident occurred at around 9:45 p.m. at the Savage facility. It is undisputed that IHB terminated Williams as a result of the incident. Jovanovich submitted a transcript of Williams' IHB disciplinary hearing at which both Hodges and Williams testified. According to their testimony, Williams was driving a locomotive, preparing to "shove" cars backwards so that Jovanovich could connect them onto a bank of stationary cars. Hodges issued a radio command for Williams to "shove eight," meaning that there were eight car lengths between Williams and the stationary cars. According to safety protocol, Williams should have moved half that distance, stopped, and waited for further instructions before continuing. Williams testified that he thought he only moved four car lengths, but he misjudged the distance and struck Jovanovich as well as the stationary cars.

¶ 12     Jovanovich claimed in his affidavit that Williams violated federal law by starting a shove move on a radio command "without specific information required by [f]ederal [l]aw" and that proper training by IHB would have informed Williams of that fact. Jovanovich further stated: "All IHB employees receive their rules training at the Blue Island Yard in Riverdale, Illinois. *** Specifically, the IHB yard in Blue Island has the only simulator which is required for training engineers like Ken Williams." He did not set forth a basis for these assertions.

¶ 13     In response, Bryan filed a supplementary affidavit stating that in his capacity as terminal superintendent, he had personal knowledge of the training and certification requirements of IHB's engineers, including Williams. IHB engineers are certified in either Indiana or Illinois depending on their home terminal; Williams' home terminal was Gibson Yard in Hammond, Indiana. Additionally, Williams received his "initial" training in Indiana. In support of this assertion, Bryan attached a July 3, 1998 letter from IHB's assistant manager of human resources

to Williams, telling Williams to report to Calumet College of St. Joseph in Whiting, Indiana for engineer training.

¶ 14    The parties also dispute the extent to which IHB conducts business in Illinois.  As discussed, IHB is incorporated in Indiana.  Additionally, according to Kapitan, IHB's corporate headquarters is in Indiana, and all corporate officers and department heads have their offices in Indiana.  Bryan explained in a supplemental affidavit that IHB operates in both northwest Indiana and the Chicagoland area.

¶ 15    Jovanovich, in his affidavit, asserted that IHB's website shows that it considers itself to be "at home" in Illinois.  In support, Jovanovich attached a one-page uncertified printout from IHB's website with the URL and date of printing omitted.  That printout stated:

> "The IHB main line circles Chicago from near O'Hare to Northwest Indiana and roughly parallels Interstate 294 (Tri-state Expressway) and I-80/94.  Its primary yard, Blue Island (a 44 class track hump yard) at Riverdale, IL lies in about the center of the railroad.  Other major yards includes [*sic*] Gibson (in Hammond, IN) which only classifies cars of new autos and Michigan Avenue Yard (in East Chicago) ***.  From East Chicago, the IHB operates east for an additional 16 miles on trackage rights***."

The printout further stated that IHB "interchanges daily with 16 other rail carriers in Chicago" and "operates as an intermediate switch carrier between the 12 trunk-line railroads for traffic interchanged between them in Chicago, generating an additional 475,000 revenue cars."

¶ 16    Jovanovich made various additional averments about IHB's business, namely: of IHB's 54 miles of mainline track, only 6 are in Indiana, and the remainder are in Illinois; over 50% of IHB's transload customers are in Illinois; over 58% of IHB's warehouse customers are in Illinois; over 65% of IHB's stations are in Illinois; and Gibson Yard is only a "minor yard" connecting

five railroads, in contrast to IHB's Illinois yards which connect to nine railroads. These statements are not supported by the attached website printout[1], nor did Jovanovich cite any alternative source for this information.

¶ 17        On November 12, 2019, IHB moved to strike the affidavits of Jovanovich, Manoski, and Wolters, arguing that they violated Supreme Court Rule 191(a)'s requirements for affidavits made in response to jurisdictional motions to dismiss. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). With regard to Jovanovich's affidavit, IHB argued:

- Nothing in Jovanovich's affidavit suggested that he had the foundational knowledge to make statements regarding IHB's training of engineers.

- Jovanovich made multiple statements about the accident that were not within his personal knowledge, namely, that Williams' actions were in violation of federal law and that proper training by IHB would have prevented Williams from moving in that situation.

- In support of his claim that IHB considered itself "at home" in Illinois, Jovanovich did not attach any certified documents. Instead, he attached an uncertified printout from IHB's website. Additionally, some of his assertions about IHB's business were unsupported by the printout and otherwise lacked a foundational basis.

With regard to Manoski and Wolters' affidavits, IHB argued that they were speculative, insofar as neither affiant claimed to have personal knowledge of what happened with the 122 Job on the day of Jovanovich's accident.

¶ 18        A hearing on IHB's motions was scheduled for November 20, 2019. The day before the hearing, Jovanovich filed certain documents regarding the volume of business that IHB conducts

---

[1] Although the printout stated that IHB has 54 miles of mainline track, it did not apportion them between Indiana and Illinois.

in Illinois. These documents, which are not included in the record on appeal, included printouts from IHB's website as well as "an old logo" of IHB which contained text referencing "a connection to all of Chicago's railroads."

¶ 19    At the November 20 hearing, the trial court denied IHB's motion to strike Jovanovich's affidavits, saying, "I'll give [the affidavits] whatever weight they have." IHB also orally moved to strike the documents submitted by Jovanovich the day before the hearing since they were not attached to an affidavit. The trial court denied that motion as well but stated that it would give the documents "only a slight amount of consideration."

¶ 20    Following argument by the parties, the trial court denied IHB's motion to dismiss, finding that Jovanovich did not meet his burden of showing general jurisdiction but did show specific jurisdiction with regard to his particular claim. The court based its decision on "the pleadings, the transcript, [and] the affidavit that I have given certain consideration to," as well as "[a]ll of the arguments that were made," but declined to explain its reasoning further. IHB then filed the instant interlocutory appeal under Rule 306(a)(3).

¶ 21                                    ANALYSIS

¶ 22    IHB argues that the trial court erred in finding that Illinois had specific jurisdiction over IHB in connection with Jovanovich's claim. Jovanovich disputes this and, as an alternative ground for affirmance, contends that Illinois also has general jurisdiction over IHB because of IHB's "extensive ties" to Illinois.

¶ 23    Where, as here, the trial court decides a jurisdictional issue purely on documentary evidence without holding an evidentiary hearing, our review is *de novo*. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. To establish jurisdiction over a nonresident defendant, plaintiff bears the initial burden of making a *prima facie* case, with any conflicts in the pleadings and affidavits being

resolved in the plaintiff's favor. *Id.* (citing *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 20). If plaintiff establishes a *prima facie* case, defendant may defeat it by offering "uncontradicted evidence that defeats jurisdiction." *Id.*

¶ 24                                    IHB's Motion to Strike

¶ 25        At the outset, IHB argues that the trial court should have stricken the affidavits of Jovanovich, Manoski, and Wolters for violating Rule 191(a). That rule provides, in relevant part:

> "[A]ffidavits submitted in connection with a motion to contest jurisdiction over the person *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 26        Since we are undertaking *de novo* review of the trial court's jurisdictional ruling, we will simply disregard any averments that do not comply with Rule 191(a). See *Cincinnati Companies v. West American Insurance Co.*, 287 Ill. App. 3d 505, 514 (1998) (where an affidavit fails to comply with Rule 191, the court need not strike the entire affidavit but may disregard only those portions it finds offensive); *Liaquat Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 56 (2001) (in determining personal jurisdiction, reviewing court "do[es] not take as true affidavits or portions thereof that do not meet the requirements of Supreme Court Rule 191(a)"). We will discuss the challenged averments in more detail as they become relevant below.

¶ 27                                    Specific Jurisdiction

¶ 28    A forum may exercise specific jurisdiction over a defendant where a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." (Internal quotation marks omitted.) *Daimler*, 571 U.S. at 127. Because specific jurisdiction is based on "an affiliatio[n] between the forum and the underlying controversy," it is limited to adjudication of issues deriving from, or connected with, that controversy. (Internal quotation marks omitted.) *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); see also *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1781 (2017) (when there is no connection between the controversy and the forum state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State").

¶ 29    Here, Jovanovich was injured in Indiana, and it is undisputed that the 122 Job operates only within Indiana. Jovanovich nevertheless argues that Illinois can exercise specific jurisdiction over IHB because (1) Williams received his engineer training in Illinois and (2) the cars handled by Jovanovich were "destined for" the Blue Island Yard in Illinois.[2] We consider these points in turn.

¶ 30    First, Bryan averred that Williams received his "initial" engineer training in Whiting, Indiana, as evidenced by a 1998 letter from IHB's human resources department to Williams. Jovanovich nevertheless argues that IHB trained Williams in Illinois, citing the following statements from his own affidavit:

    "9. All IHB employees receive their rules training at the Blue Island Yard in Riverdale, Illinois.

_____

[2] In the trial court, Jovanovich also alleged that his injury occurred because Williams picked up and followed a stray radio command from Illinois. But he "does not rely on" this allegation on appeal and, in fact, appears to concede that the radio command to "shove" came from Hodges.

10. Specifically, the IHB yard in Blue Island has the only simulator which is required for training engineers like Ken Williams."

IHB argues that these statements should be disregarded for violating Rule 191, since they are not within Jovanovich's personal knowledge and the affidavit does not "affirmatively show" that Jovanovich could testify competently to these facts. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 31      We agree. Because an affidavit is a substitute for live, in-court testimony (*Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 163), the affiant must establish a foundation for his personal knowledge of the facts to which he testifies. See Ill. R. Evid. 602 (eff. Jan. 1, 2011) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Here, Jovanovich was a conductor, not an engineer. He does not provide any foundation for his assertion that "[a]ll IHB employees" receive rules training in Illinois, nor his assertions about IHB's engineer training.

¶ 32      Jovanovich argues that his statements are "essentially common knowledge" among IHB employees. He further asks, "If everyone in a business tells a person that a piece of equipment is located in a particular place, can that person not reasonably assume the equipment is at that location?" But Rule 191(a) requires affiants to have personal knowledge, not secondhand information and assumptions based on hearsay. Thus, Jovanovich's averments regarding Williams' training do not meet the requirements of Rule 191(a) and he has not met his burden of showing that Williams received his allegedly improper engineer training in Illinois.

¶ 33      Jovanovich asks that we remand for him to "clarify the basis for his statements *** through an additional affidavit" or request discovery about IHB's engineer training. But "courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." *Gardner v. Navistar International*

*Transportation Corp.*, 213 Ill. App. 3d 242, 249 (1991).  Here, Jovanovich waived the right to take discovery, and the record does not reflect that he sought to file any response to IHB's motion to strike or any supplementary affidavit.  Accordingly, we deny Jovanovich's request.

¶ 34        Jovanovich next argues that Illinois has special jurisdiction over IHB because the cars he handled were "destined for" the Blue Island Yard in Illinois, based on the affidavits of Manoski and Wolters.

¶ 35        Initially, we note that Manoski and Wolters do not state when they worked the 122 Job, only that they did so "many times"; thus, their personal knowledge of the cars handled by Jovanovich on the day of his accident is questionable at best.  More importantly, even if we assume *arguendo* that the "Blues" handled by Jovanovich were eventually "destined for" Blue Island, we do not find that sufficient to establish specific jurisdiction in Illinois.  In this regard, this case is analogous to *Lebrun v. Kansas City Southern Ry. Co.*, 2019 WL 4686523, at *2 (E.D. Texas Sept. 3, 2019).  Lebrun was injured while inspecting railcars in Louisiana.  He brought suit against the railroad in Texas, arguing that Texas had specific jurisdiction because a plurality of cars on the train were heading to Texas.  The *Lebrun* court disagreed, citing the well-established proposition that a defendant cannot be haled into a jurisdiction solely due to "random, fortuitous, or attenuated" contacts.  (Internal quotation marks omitted.)  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

¶ 36        Here, as noted, the 122 Job operates exclusively within Indiana; Jovanovich and his fellow crew members were assigned to bring the cars from the Savage facility to the MAV Yard in Indiana, whereupon other crews would transport them to their eventual destinations.  Thus, the allegation that other IHB employees may have later transported the cars to Illinois is the kind of

"random, fortuitous, or attenuated" contact (*Burger King*, 471 U.S. at 475 (internal quotation marks omitted)) that will not support specific jurisdiction.

¶ 37    Consequently, we find Jovanovich has not met his burden of establishing that his accident arose out of or relates to IHB's Illinois activities, and Illinois cannot exercise special jurisdiction over IHB in connection with Jovanovich's claim.

¶ 38                                              General Jurisdiction

¶ 39    As an alternative ground for affirming the trial court's ruling, Jovanovich argues that IHB's ties to Illinois are so extensive that it is subject to general jurisdiction in Illinois. See *Salte v. YMCA of Metropolitan Chicago Foundation*, 351 Ill. App. 3d 524, 532 (2004) (we may affirm on any ground supported by the record).

¶ 40    In the 2014 case of *Daimler*, 571 U.S. at 137, the Supreme Court held that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Thus, to establish general jurisdiction, it is not enough for a defendant to have "continuous and systematic" contacts with the forum state. *Id.* at 138-39. Rather, the defendant's contacts must be "so continuous and systematic as to render [it] essentially at home" in the state. (Internal quotation marks omitted.) *Id.* at 139.

¶ 41    The *Daimler* Court identified two places in which a corporation is "at home": its state of incorporation and the state in which it has its principal place of business. *Id.* at 137, 139 n.19 (citing *Goodyear*, 564 U.S. at 924). A corporation's principal place of business is defined as its "nerve center," *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). In adopting a "nerve center" approach, the *Hertz* Court explicitly rejected a "general business activities" approach that would measure the total amount of business activities that the corporation conducts in the forum

state and calculate whether they are "significantly larger" than in the next-ranking state. *Id.* at 93-94. The Court explained that "administrative simplicity is a major virtue in a jurisdictional statute." *Id.* at 94. In most cases, determining a corporation's nerve center will be simpler and more predictable than attempting to determine the most important business locale under a general business activities standard. *Id.* at 95; see also *Daimler*, 571 U.S. at 137 (a corporation's state of incorporation and the state in which it has its principal place of business "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable").

¶ 42    In this case, IHB is incorporated in Indiana. Moreover, IHB's corporate headquarters is in Indiana and all of its corporate officers and department heads are officed in Indiana. Thus, it is apparent that IHB does not meet either of the *Daimler* criteria for being "at home" in Illinois.

¶ 43    The *Daimler* Court additionally left open the possibility that "in an exceptional case," a corporation's operations in a state other than its state of incorporation or its principal place of business might be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. But as our supreme court has explained, it is " 'incredibly difficult' " to establish general jurisdiction in such a forum. *Aspen American Insurance Company v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 19 (quoting *Monkton Insurance Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); see also *Wesly v. National Hemophilia Foundation*, 2017 IL App (3d) 160382, ¶ 27 (only in "the most exceptional cases" may a corporate defendant be subject to general jurisdiction in a forum that does not match either of the *Daimler* criteria (internal quotation marks omitted)).

¶ 44    As an example of an "exceptional case," *Daimler* cited *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). There, the defendant was a mining company that was

incorporated under the laws of the Philippines and owned mining properties in the Philippines. During the Japanese occupation of the Philippines, the company ceased operations there, and its president moved to Ohio, where he "carried on *** a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* at 448. Under these facts, the *Perkins* Court held that Ohio courts could exercise general jurisdiction over the company without violating due process. *Id.*

¶ 45        *Perkins* is readily distinguishable from the present case, where it is undisputed that IHB directs its corporate affairs from its corporate headquarters in Indiana. Jovanovich nevertheless argues that we should consider this an "exceptional case" because IHB carries on "the vast majority" of its business in Illinois. We disagree. In essence, Jovanovich is trying to resurrect the "general business activities" approach rejected by the Court in *Hertz,* 559 U.S. at 93-95. He does not cite any post-*Daimler* cases in which a corporation has been found subject to general jurisdiction in a state merely because of the proportion of business it transacts in that state.

¶ 46        We additionally note that the facts of this case illustrate the difficulty in measuring the quantum of business activities conducted within a state, which is precisely what the *Hertz* Court sought to avoid in adopting a "nerve center" standard. For instance, the web page cited by Jovanovich in opposition to IHB's motion to dismiss states that IHB's "primary yard" is the Blue Island Yard in Illinois, but IHB also has multiple "major yards" in Indiana (the Gibson Yard and the MAV Yard). Notwithstanding this characterization, Jovanovich repeatedly claims that the Gibson Yard is only a "minor" yard. Jovanovich also asserts that "over 50% of the Railroad's transload customers" and "over 58% of its warehouse customers" are in Illinois. Leaving aside the questionable admissibility of these assertions, Jovanovich offers no argument as to why we should focus on these customers to the exclusion of IHB's other customers. In short, requiring

courts to weigh such factors in their jurisdictional analysis would impede the goals of simplicity and predictability set forth by the Supreme Court in *Daimler* and in *Hertz*.[3]

¶ 47    Accordingly, we find, as did the trial court, that IHB—as an Indiana corporation with its corporate headquarters in Indiana—is not so "at home" in Illinois as to be subject to general jurisdiction for suits unrelated to its activities in Illinois.

¶ 48                                               CONCLUSION

¶ 49    Jovanovich has not met his burden of showing that his accident relates to IHB's activities in Illinois, nor has he shown that, under *Daimler*, IHB may be considered "at home" in Illinois so as to justify the exercise of general jurisdiction.  Accordingly, we reverse the judgment of the trial court and remand for the court to grant IHB's motion to dismiss Jovanovich's suit for lack of personal jurisdiction.

¶ 50    Reversed and remanded.

---

[3] We additionally note that, in discussing IHB's presence in Illinois as compared to Indiana, Jovanovich cites to Wikipedia's definition of a switch carrier (though, curiously, without an actual citation).  But Wikipedia itself states that because it is a wiki that anyone can edit, "you probably shouldn't be citing Wikipedia." *Citing Wikipedia*, https://en.wikipedia.org/wiki/Wikipedia:Citing_Wikipedia (last visited Sept. 21, 2020).