SECOND DIVISION

No. 1-09-2643

| | | |
|---|---|---|
| TERRI McNALLY, SEAN MULRONEY, | ) | |
| and  J. BRIAN PIERCE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 L 2565 |
| | ) | |
| GREG MORRISON, | ) | Honorable |
| | ) | Dennis J. Burke, |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |
| (TASA Group, Inc., Defendant). | ) | |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Karnezis and Connors concurred in the judgment.

OPINION

Here we are called upon to determine whether the trial court has personal jurisdiction

pursuant to the Illinois long arm statute (735 ILCS 5/2-209 (West 2008)) over a nonresident

defendant. For the following reasons, we reverse the decision of the trial court and find that the

court does have personal jurisdiction over defendant.

Plaintiffs Terri McNally, Sean Mulroney, and J. Brian Pierce sued defendants Greg

Morrison, M.D., and TASA Group, Inc.,[1] in the circuit court of Cook County in 2009, alleging

breach of contract, consumer fraud, fraud, and professional negligence. These actions arise from

plaintiffs' hiring of Dr. Morrison, who resides in the state of Ohio, as their controlled expert

---

[1]Defendant TASA Group is not a party to this appeal.

No. 1-09-2643

witness in a separate tort suit that Mulroney and Pierce had filed on behalf of McNally. The

defendant rendered to plaintiffs his expert report, opining that Dr. Mark Zukowski had deviated

from the standard of care. The plaintiffs relied on the expert report and opinion in proceeding

with the tort action. At his deposition, defendant contradicted his expert report in its entirety and

testified that Dr. Zukowski's actions did not deviate from the standard of care. Following the

dismissal of their case against Dr. Zukowski, plaintiffs filed this case and Morrison moved to

dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West

2008)) alleging that the trial court did not have personal jurisdiction over him. The trial court

granted defendant's motion to dismiss and plaintiffs filed this timely appeal. The only issue

before us is whether the trial court had personal jurisdiction over defendant.

JURISDICTION

The trial court entered a final judgment in the instant case on September 23, 2009, and

defendant filed his notice of appeal on October 6, 2009. Accordingly, this court has jurisdiction

pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments

entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); 303 (eff. May 30, 2008).

BACKGROUND

The events of this case begin with a separate and unrelated medical malpractice action

that plaintiffs Mulroney and Pierce, both attorneys, had brought on behalf of plaintiff McNally

against plastic surgeon Dr. Mark Zukowski. Plaintiffs alleged in their complaint against

Zukowski that he negligently performed ultrasonic (UAL) and traditional liposuction on

2

McNally. In the course of preparing their case against Zukowski, Mulroney and Pierce contacted TASA, a referral service that connects testifying and consulting experts with clients in law, industry, and government. Mulroney and Pierce informed TASA that they sought physicians who could testify as expert witnesses regarding UAL procedures such as the one performed on McNally. TASA provided Mulroney and Pierce with the names and contact information for several plastic surgeons who met plaintiffs' specifications.

After speaking with each of the prospective experts via telephone, Mulroney and Pierce decided to employ defendant Morrison, an Ohio plastic surgeon, in their case against Zukowski. On October 10, 2005, Pierce sent a retention letter to Morrison. The letterhead on the page bore the name "J. Brian Pierce & Associates/Attorneys at Law" and listed an address in Chicago, Illinois. No other reference to the State of Illinois appeared in the document. The letter stated that Morrison had been recommended by TASA and briefly described the liposuction procedure and follow-up care at issue in the action against Zukowski. The letter then concluded as follows:

"I have enclosed several items for your review. If possible, I would like to briefly discuss this matter with you tomorrow afternoon. Dr. Zukowski's deposition will proceed the following day on Wednesday, October 12, 2005.

I have been informed of your fee structure, and I accept the terms of the same. I look forward to working with you on this matter."

On October 11, 2005, TASA sent a memorandum of confirmation to Pierce & Associates, the law firm of plaintiff Pierce. The memorandum references an attached rate sheet that details the rates and fees for Dr. Morrison's services. It also states that, "After reviewing your requirements, we have referred the above-named Expert [Morrison]," and further states that TASA will bill the firm for "all time the Expert spends on your behalf." Although the memorandum includes the legend, "IMPORTANT - SEE OTHER SIDE," the copy attached to plaintiffs' complaint in the instant case contains only the first page. The exhibit does not include the reverse side of the memorandum. However, the memorandum nowhere purported to describe what duties an expert referred by TASA would perform or that Dr. Morrison, the expert, was an agent of TASA. It merely indicated that TASA would and did provide referral and billing services.

The rate sheet included in the exhibit attached to the memorandum includes fee rates for, among other items, out-of-office depositions and court appearances. In addition, the rate sheet designated that fees were estimated and payable in advance to TASA.

On October 26, 2005, Mulroney sent Morrison a second letter and enclosed preoperation and postoperation photographs from McNally's liposuction procedure. Pierce sent a third letter to Morrison on November 20, 2005. This third letter acknowledged Mulroney's receipt of a report prepared by Morrison in October. With the letter, Mulroney enclosed additional photographs "as per your request," along with Zukowski's deposition for Morrison's "review and reference in [his] final report." The letter also included directions to Morrison regarding his

final report. Specifically, the letter directed Morrison to remove from his final report any reference to the observations of Dr. John Hugill, who had submitted the affidavit required for filing a medical malpractice suit in Illinois. See 735 ILCS 5/2-622 (West 2008). The letter concluded as follows: "I am very pleased with your report with the elimination of reference to Dr. Hugill, and with the future incorporation of the pictures and the deposition of Dr. Mark Zukowski."

On January 31, 2006, Mulroney mailed Morrison a fourth letter, enclosing the deposition transcripts of Dr. Zukowski. Approximately 10 months later, on December 1, 2006, Morrison mailed his expert witness report to Mulroney. Morrison's report includes the header "TASA Case #IL" and states that it is in regard to "your client Terry McNally [*sic*] and her legal action against Dr. Mark Zuckowski [*sic*]."

Mulroney stated in an affidavit that sometime during the second week of January 2007, he had a telephone conversation with Morrison to discuss the expert witness report and to begin preparations for Morrison's deposition, which would be taken in February 2007. In order to accommodate Morrison's private practice, Pierce and Mulroney, along with attorneys for Dr. Zukowski, agreed to hold the deposition in Morrison's office in Ohio. Mulroney arranged to spend some time with Morrison in Ohio prior to the deposition in order to prepare his testimony. In his affidavit, Mulroney attested that, "During our preparation, Dr. Morrison informed me that he had been unable to locate and therefore had never reviewed the deposition transcripts of [McNally] and [Dr. Zukowski] nor had he looked at the pre and post operation photographs of

Ms. McNally. When I expressed concern, he assured me that he was firm in his opinion regardless of his failure to review those items." However, at the deposition, Morrison contradicted his expert report in its entirety and testified that Dr. Zukowski's actions did not deviate from the standard of care.

During this period, from October 2005 through February 2007, Mulroney and Pierce had sent TASA four checks in response to bills for the time that Morrison had spent on the Zukowski case. All billing and payments went through TASA; the record does not contain any evidence of Morrison directly billing plaintiffs for his services.

After Morrison's deposition, plaintiffs' case against Dr. Zukowski was dismissed. In addition, Morrison signed an affidavit attesting that he had not reviewed McNally's entire medical record prior to his deposition and that, after reviewing the entire record, he opined that Dr. Zukowski's actions did not meet the applicable standard of care and contributed to McNally's injuries.

Following the dismissal of their case against Dr. Zukowski, plaintiffs commenced the instant action against Morrison and TASA. In their complaint, plaintiffs sued Morrison both individually and, in the alternative, as an agent of TASA. The complaint pled one count - breach of contract - against TASA[2] and four counts against Morrison. Specifically, plaintiffs alleged

[2] Subsequently, TASA moved to dismiss pursuant to section 2-619.1 on the grounds that the memorandum of confirmation sent to Pierce and Mulroney in October 2005 contained a valid forum selection clause mandating that any suits brought under the agreement would be pursued in Montgomery County, Pennsylvania. In support of its motion, TASA attached both sides of the memorandum and the reverse page contained the forum selection clause. The reverse page also contained a provision disclaiming any liability on the part of TASA with respect to any act or omission of an expert retained

breach of contract, consumer fraud, fraud, and professional negligence by Morrison for his performance as an expert witness in the action against Dr. Zukowski.

On May 13, 2009, Morrison filed a motion to dismiss pursuant to section 2-619 alleging that the complaint failed to state a basis upon which the trial court could exercise personal jurisdiction over him. In support of his motion, Morrison submitted an affidavit in which he attested:

> "Counsel Mulroney and Pierce accepted TASA's suggestion of me as a consultant on the malpractice matter.
>
> The contract for consulting services was between TASA and counsel Mulroney and Pierce. I was not a party to that agreement and have no contract with a person or entity in Illinois regarding this matter.
>
> All billing and invoicing related to the consulting services were handled by TASA, from its office in Pennsylvania, and were limited to exchanges between TASA and counsel Mulroney and Pierce.
>
> All payments for consulting services were made by counsel Mulroney and Pierce to TASA in Pennsylvania.

---

through TASA's referral service. In addition, the disclaimer stated that TASA makes no representation or warranty regarding the qualifications of the experts which it refers. The trial court entered an agreed order dismissing TASA from the instant case on July 28, 2008, and TASA is not a party to this appeal.

At no time did I initiate contact by telephone with counsel Mulroney or Pierce, or McNally, or anyone else in Illinois.

My review of records and materials related to McNally's care and treatment was performed in Ohio.

My report on McNally's care and treatment was prepared in Ohio.

At no time did I visit Illinois for any purpose related to the McNally malpractice case.

* * *

At no time did I ever avail myself of any Illinois law related to my review of records and materials related to McNally's care and treatment.

I have never practiced medicine in Illinois nor testified in Illinois while in the capacity of a retained consultant on a medical malpractice action."

Mulroney filed a counteraffidavit in response to Morrison's motion to dismiss, in which he chronicled his dealings with Morrison. Mulroney attested to several telephone conversations discussing the case and Morrison's written work product. In addition, Mulroney described the events leading up to and during Morrison's deposition in which Morrison's lack of preparation came to light. However, Mulroney's affidavit contains little detail about the relationship between

plaintiffs and Morrison, other than that Morrison acted as an "expert."

## ANALYSIS

We are presented with only one issue on appeal: whether the trial court erred in dismissing the instant case against the nonresident defendant for lack of personal jurisdiction. Plaintiffs assert that the trial court could exercise personal jurisdiction over Morrison because he entered into an agreement with plaintiffs to provide expert witness services to Illinois attorneys in an Illinois medical malpractice action.

### I. Standard of Review

The plaintiff bears the burden of making a *prima facie* showing that the trial court has personal jurisdiction over a nonresident defendant. *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006). When, as here, the trial court based its decision solely on documentary evidence, we review a trial court's dismissal of a case for lack of personal jurisdiction *de novo*. *Dickie v. Cannondale Corp.*, 388 Ill. App. 3d 903, 906 (2009). When reviewing affidavits and pleadings in the record, we resolve any conflicts between the documents in the plaintiffs' favor, for purposes of determining whether they have made a *prima facie* case for jurisdiction. *Bolger v. Nautical International, Inc.*, 369 Ill. App. 3d 947, 950 (2007). A defendant's uncontradicted evidence that defeats jurisdiction can overcome a plaintiff's *prima facie* showing. *Bolger*, 369 Ill. App. 3d at 950. And "well-alleged facts within affidavits presented by the defendant must be taken as true notwithstanding the existence of contrary averments in the plaintiff's pleadings unless the defendant's affidavits are contradicted by affidavits presented by the plaintiff, in

which case the facts in the plaintiff's affidavits prevail." *Keller v. Henderson*, 359 Ill. App. 3d 605, 611 (2005).

## II. Personal Jurisdiction

In order for a court to have personal jurisdiction over a party, three elements must be established: (1) proper service of process, (2) jurisdiction under the Illinois long-arm statute (735 ILCS 5/2-209 (West 2008)), and (3) due process under both the United States and Illinois Constitutions. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 952 (2010).

We note as a preliminary matter that the record contains no proof of service. Counsel for defendant filed an appearance with the court, and neither party has raised lack of proper personal service as a material issue to determine personal jurisdiction either in the trial court or in this appeal. Accordingly, we conclude that defendant counsel's appearance and neither party raising the issue in the trial court or in this appeal result in a forfeiture and we assume  proper personal service in our analysis.

## 1. Illinois Long-Arm Statute

The long-arm statute in Illinois sets forth several bases upon which trial courts may exercise personal jurisdiction over nonresident defendants. 735 ILCS 5/2-209 (West 2008). Section 2-209 provides in pertinent part:

> "(a) Any person, whether or not a citizen or resident of this

State, who in person or through an agent does any of the acts

hereinafter enumerated, thereby submits such person, and, if an

individual, his or her personal representative, to the jurisdiction of

the courts of this State as to any cause of action arising from the

doing of any of such acts:

(1) The transaction of any business within

this State;

(2) The commission of a tortious act within

this State;

\* \* \*

(7) The making or performance of any

contract or promise substantially connected with

this State[.]" 735 ILCS 5/2-209 (West 2008).

Plaintiffs assert jurisdiction is proper under three different sections of the statute: doing business

within Illinois, commission of a tort in Illinois, and the making or performance of a contract or

promise substantially connected with Illinois.

However, the long-arm statute also includes a "catchall" provision in subsection (c),

which provides that a court "may also exercise jurisdiction on any other basis now or hereafter

permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-

209(c) (West 2008). Illinois courts have found this section "to be coextensive with the due

process requirements of the Illinois and United States Constitutions." *Keller*, 359 Ill. App. 3d at 612, (citing *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 386 (2005)). In addition, subsection (c) provides a separate independent basis upon which a trial court can exercise jurisdiction. *Keller*, 359 Ill. App. 3d at 612. Thus, "the long-arm statute is satisfied when due process concerns are satisfied, regardless of whether the defendant performed any of the acts enumerated in the long-arm statute." *Id.*

### 2. Due Process

The Illinois Constitution contains its own due process guarantee, separate and distinct from that of the United States Constitution. *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Under the constitution of this state, due process demands that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 141 Ill. 2d at 275. While it is theoretically possible that the due process standards of the Illinois and United States Constitutions could diverge in some cases, Illinois courts have yet to identify those situations. See *Keller*, 359 Ill. App. 3d at 619-20. More importantly, Morrison does not assert that they do here. Accordingly, in this case, if plaintiffs satisfy federal due process concerns, then they satisfy Illinois due process concerns as well.

Federal due process requires that a nonresident defendant have certain "minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'[Citation.] " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 560 (2003). The minimum contacts test "cannot be simply mechanical or quantitative." *International Shoe*, 326 U.S. at 319. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* In order for jurisdiction to comport with due process, there must be "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This purposeful availment requirement ensures that a nonresident defendant will not be forced to litigate in Illinois because of random, fortuitous, or attenuated contacts or the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (Emphasis in original.) *Burger King*, 471 U.S. at 475 (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)). This connection need not involve physical contacts with the forum state. Rather, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," that state may exercise personal jurisdiction over a nonresident defendant. *Burger King*, 471 U.S. at 476 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)).

13

No. 1-09-2643

Once plaintiffs have established a defendant's minimum contacts with Illinois, we must then consider those contacts in light of certain other factors to determine whether the exercise of personal jurisdiction comports with " 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). The Supreme Court has set forth the following factors as aids in establishing "the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required": (1) the burden on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the plaintiffs' interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive policies. *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The burden then shifts to defendant to present a compelling case that the trial court's assertion of jurisdiction over him would be unreasonable. *Burger King*, 471 U.S. at 477.

Thus, we first must determine whether Morrison had sufficient minimum contacts with Illinois to support an exercise of personal jurisdiction. When, as here, plaintiffs assert minimum contacts arising from an agreement between the parties, we must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in order to determine whether such minimum contacts exist. *Burger King*, 471 U.S. at 479.

Both sides agree that Morrison never performed any physical activities in Illinois in

14

conjunction with the medical malpractice case against Dr. Zukowski, and neither party asserts that there is a written contract governing Morrison's services as an expert witness. Indeed, the record here is sparse regarding what Morrison did or did not do. However, the pleadings and affidavits in the record provide enough material to give rise to the inference that Morrison had entered into some sort of agreement with plaintiffs Mulroney and Pierce, under which Morrison would provide expert witness services to the plaintiffs in their Illinois medical malpractice action.

The record establishes that Mulroney and Pierce retained Morrison as an expert in their malpractice action. Indeed, the evidence in the record gives rise to the inference of two separate agreements: (1) an agreement between the plaintiffs and TASA, under which TASA would refer potential experts and handle billing and payments in the event that the plaintiffs decided to employ one of the referred experts, and (2) an agreement between the plaintiffs and Morrison that Morrison would serve as a medical expert in the plaintiffs' case. Because TASA's memorandum of confirmation expressly states that TASA was not responsible for verifying the qualifications of the experts that it referred or guaranteeing the performance of various services by such experts, a separate agreement must cover the actual performance of expert witness services. Although Morrison asserts in his affidavit that he has "no contract with a person or entity in Illinois regarding this matter," that is a conclusion of law, which this court is entitled to disregard. Ill. S. Ct. R. 191(a) (eff. July 1, 2002); *Robidoux v. Oliphant*, 201 Ill. 2d 324, 334-35 (2002).

15

No. 1-09-2643

Indeed, the course of dealings between the parties suggests otherwise, namely, that Morrison had an agreement with the plaintiffs. Morrison engaged in a course of correspondence with Mulroney and Pierce that spanned over a year's time. In the course of this correspondence, plaintiffs requested that Morrison review several different documents relating to the medical malpractice action and come up with an expert opinion as to whether Dr. Zukowski - the plastic surgeon who had operated on McNally - had deviated from the standard of care during his treatment of McNally. Morrison prepared multiple drafts of an expert witness report, incorporating comments and requests from plaintiffs into later drafts. He attended a deposition for use in the malpractice action. And, as may be inferred from the fee structure that he provided to TASA, Morrison at the very least contemplated testifying at trial in the malpractice case. The only logical inference to be drawn from these facts is that Morrison agreed to serve as an expert witness in the plaintiffs' malpractice case.

Dr. Morrison maintains that he never entered into any sort of agreement with the plaintiffs and that his conduct was governed solely by a contract with TASA. We are not persuaded by this argument. The record contains no contract between TASA and Dr. Morrison, nor does it contain a contract between TASA and the plaintiffs other than the memorandum of confirmation described above. While the parties agree that there was no written contract between Dr. Morrison and the plaintiffs, as discussed above, the course of dealings between those parties suggests that an oral agreement existed. Furthermore, the memorandum of confirmation generated by TASA for the plaintiffs does not contain the essential terms of a contract that

16

would govern Dr. Morrison's performance as an expert witness. The memorandum merely states that TASA provided referral services to the plaintiffs and would continue to serve as a billing service for Dr. Morrison during his relationship with the plaintiffs. It never indicated what services Dr. Morrison would provide, where he would provide them, or during what time period he would provide those services. All of those terms would need to be, and presumably were, negotiated between the plaintiffs and Dr. Morrison.

The fact that the plaintiffs tendered their payments to Dr. Morrison through TASA does not negate the inference that the plaintiffs and Dr. Morrison formed an agreement, independent of TASA, that governed what services Dr. Morrison would perform and how he would perform them. Indeed, the reverse side of TASA's memorandum of confirmation expressly disclaimed any liability on the part of TASA with respect to any act or omission of an expert retained through TASA's referral service. From this language, we conclude that the memorandum confirmed a contract between the plaintiffs and TASA to provide referral services; that contract did not govern services that a referred expert witness would provide to the plaintiffs. Dr. Morrison's written correspondence and telephone conversations with the plaintiffs delineated the scope of services that the plaintiffs engaged Dr. Morrison to perform, creating an oral agreement between the parties. The record does not indicate what the specific terms of the oral agreement were, but it does contain sufficient evidence for us to infer the existence of such an agreement. In the absence of any evidence in the record indicating that Dr. Morrison's performance was governed solely by a contract between Dr. Morrison and TASA - a contract, we note, that is

nowhere found or even referenced in the record - we must resolve this issue in favor of the plaintiffs. *Bolger*, 369 Ill. App. 3d at 950 (for the purpose of determining whether a plaintiff has made a *prima facie* showing of jurisdiction, any conflicts between documents in the record must be resolved in the plaintiff's favor).

Thus, all of Morrison's actions created a 'substantial connection' [citation] with Illinois. *Burger King*, 471 U.S. at 475. He was serving as an expert witness in an *Illinois* medical malpractice case. Thus, even though the only services that he had actually performed took place in Ohio, Morrison's services were intended to produce a result in Illinois. We fail to see how these expert witness services were not 'purposefully directed' [citation] at Illinois residents, namely, McNally and her attorneys, Mulroney and Pierce. *Id.* at 476.

Moreover, the *Burger King* factors support an exercise of jurisdiction. See *id*. at 477. First, the burden on Morrison to defend in Illinois does not appear to be unduly great. Ohio and Illinois are relatively close geographically and a change of venue would solve any problems posed by the distance between the two states. In addition, by agreeing to serve as an expert witness in an Illinois case, Morrison agreed to comply with the Illinois rules of civil procedure and trial practice. Nor has he shown how defending a suit in Illinois under Illinois law would be unduly burdensome when he had already agreed to testify in an Illinois case. Second, Illinois has a substantial interest in adjudicating this dispute because it concerns the conduct of an expert witness in an Illinois tort case. Third, exercising jurisdiction would further the plaintiffs' interest in obtaining convenient and effective relief. Plaintiffs will have to establish how Morrison's acts

18

and omissions affected a medical malpractice case that arose out of actions in Illinois, was pursued in Illinois, and was ultimately decided in an Illinois court. Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies also supports an exercise of jurisdiction. All of the effects of Morrison's acts and omissions occurred in Illinois, namely, the dismissal of plaintiffs' case against Dr. Zukowski. Because of the substantial effect that Morrison's actions had in Illinois, Illinois is the most efficient forum to litigate this suit. Finally, it is in the interest of the several states to hold citizens of one state accountable for their actions that have a substantial impact on citizens of another state. Thus, Illinois's interest in protecting its citizens from predation by citizens of other states, at least in this matter, outweighs Ohio's interest in protecting its citizens from the inconvenience of defending a lawsuit in another state.

Accordingly, we find that plaintiffs have established sufficient minimum contacts between Morrison and the state of Illinois such that he should reasonably anticipate being brought into court here. *Knaus v. Guidry*, 389 Ill. App. 3d 804, 815 (2009) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Thus, the trial court erred in dismissing the instant case for lack of personal jurisdiction.

In addition, plaintiffs argue that the trial court should have allowed them an opportunity to amend their pleadings prior to dismissing the case. The trial court may allow a party to amend its pleadings at any time before final judgment "on just and reasonable terms." 735 ILCS 5/2-616(a) (West 2008). In the instant case, plaintiffs did not seek leave to amend their complaint

19

until after the trial court had dismissed the case. However, because we remand this case for further proceedings, plaintiffs are free to seek leave to amend their complaint on remand.

CONCLUSION

Accordingly, for the foregoing reasons, we reverse the decision of the circuit court of Cook County and remand the case for further proceedings.

Reversed and remanded.

No. 1-09-2643

---

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

TERRI McNALLY, SEAN MULRONEY, and  J. BRIAN PIERCE,

     Plaintiff-Appellants,

    v.

GREG MORRISON,

     Defendant-Appellee.

  (TASA Group, Inc., Defendant).

---

No. 1-09-2643

Appellate Court of Illinois
First District, Second Division

March 15, 2011

---

JUSTICE HARRIS delivered the opinion to the court.
Justices Karnezis and Connors concurred in the judgment and opinion.

---

Appeal from the Circuit Court of Cook County.

The Honorable Dennis J. Burke, Judge Presiding.

---

John C. Seastrom, of counsel, 661 West Lake Street, Suite 2 South,
Chicago, IL 60661, for APPELLANTS.

HeplerBroom LLC, 150 North Wacker Drive, Suite 3100, Chicago, IL 60606,

No. 1-09-2643

(Paul L. Price and Robert E. Elworth, of counsel), for APPELLEE.