2021 IL App (1st) 201242-U

FOURTH DIVISION
June 24, 2021

No. 1-20-1242

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| STEVE QUALIZZA, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| FISCHER FINE HOME BUILDING, INC., a corporation, | ) ) ) | No. 19 L 3896 |
| Defendant-Appellant, | ) ) | |
| and | ) ) | |
| MORTENSON ROOFING CO., INC., an Illinois Corporation; TILE ROOFS, INC., an Illinois Corporation; MICHAEL O'HALLERAN; and KAY O'HALLERAN, | ) ) ) ) ) | Honorable Christopher E. Lawler, Judge Presiding. |
| Defendants. | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirming the judgment of the circuit court of Cook County denying the nonresident defendant's motion to dismiss for lack of personal jurisdiction where the plaintiff established that the defendant had sufficient minimum contacts with Illinois such that the exercise of jurisdiction over the defendant did not offend

traditional notions of fair play and substantial justice.

¶ 2    Plaintiff Steve Qualizza filed a personal injury action in the circuit court of Cook County against defendants Fischer Fine Home Building, Inc., Mortenson Roofing Co., Inc., Tile Roofs, Inc., and Michael and Kay O'Halleran (collectively defendants) after he was injured while performing construction work at the O'Halleran property in Wisconsin.  Specifically at issue in this case are the three counts he alleged against Fischer Fine Home Building, Inc. (Fischer) sounding in construction negligence, negligence, and premises liability.  Defendant Fischer filed a motion to dismiss arguing the circuit court of Cook County lacked personal jurisdiction due to insufficient contacts with Illinois, which the circuit court denied.

¶ 3    On permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Feb. 26, 2010), Fischer (the only defendant appealing) contends that the circuit court erred when it found it had specific personal jurisdiction over Fischer.  For the reasons which follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5    The lawsuit from which this appeal stems was filed by plaintiff, Steve Qualizza, an Illinois resident, against defendants Fischer, a Wisconsin-based corporation, Mortenson Roofing Co., Inc., an Illinois corporation, Tile Roofs, Inc., an Illinois corporation, and Michael and Kay O'Halleran, Illinois residents.  The allegations of the complaint arise from the construction of a home in Fontana, Wisconsin on Lake Geneva.  The O'Hallerans contracted with Vinci Hamp Architects, Inc. (an Illinois-based architectural firm) to create architectural plans for the Wisconsin residence.  The O'Hallerans then entered into a contract with Fischer, a general contractor, to provide general contracting services for the project in the amount of $3.35 million. The contract with Fischer provided that "all work shall be done in accordance to the provisions

of the plans and specifications by Vinci/Hamp Architects, Inc." and that "[t]he owner shall communicate with subcontractors only through the Contractor." In addition, the contract stated that Fischer was exclusively responsible for the safety precautions and programs in connection with the work at the job site.

¶ 6    In his complaint, plaintiff alleged that he was hired by Mortenson Roofing Co., Inc. as an independent contractor to perform work on the O'Halleran property. While performing work on the exterior of the property, plaintiff fell off of scaffolding causing him injury. Under all three counts, plaintiff alleged that Fischer was negligent in its handling of the project and that Fischer's actions proximately caused his injury.

¶ 7    Fischer filed a motion to dismiss under section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2020)), asserting Illinois lacked personal jurisdiction to proceed against it under the Illinois long-arm statute (735 ILCS 5/2-209 (West 2018)). Specifically, Fischer argued that it lacked sufficient contacts with Illinois to subject it to specific Illinois' jurisdiction.[1]  Fischer, a Wisconsin-based company, asserted that it was approached by the O'Hallerans in Wisconsin to build a home for them in Fontana, Wisconsin. From January 1, 2015, to the present, Fischer selected local Wisconsin subcontractors for its projects. The three Illinois-based subcontractors (Mortenson Roofing Co., Inc., Tile Roofs, Inc., and Interior Glass Design) were not suggested or selected by Fischer, but by Vinci Hamp Architects, Inc. and were approved by the O'Hallerans. Fischer denied having any relationship with these subcontractors before or after the O'Halleran project. Fischer maintained—based on these facts—that it had not purposefully directed its activities at the residents of Illinois and denied that any act referenced in the complaint can be linked to any activity conducted by Fischer in Illinois.

---

[1] Fischer also argued that Illinois could not exercise general jurisdiction over it. The circuit court agreed and this issue is not before us on appeal.

¶ 8    In support of its motion, Fischer attached the affidavit of Timothy Fischer, the owner and registered agent of Fischer.  In his affidavit, Timothy Fischer averred that Fischer is a Wisconsin-based corporation with its principal place of business in Genoa City, Wisconsin.  Timothy Fischer further averred that, based on his personal knowledge, Fischer has never maintained an office, advertised, or constructed homes in Illinois.  Fischer also owns no real property or any property in Illinois, nor does it maintain any bank accounts, or insure anyone in Illinois.  According to Timothy Fischer's affidavit, since 2015 Fischer has derived all of its revenue from activities conducted from within Wisconsin.  Timothy Fischer further averred that in the construction of the O'Halleran project, Fischer did, however, subcontract certain duties to various subcontractors including Illinois-based defendants Mortenson Roofing Co., Inc. and Tile Roofs, Inc., although these particular subcontractors were not initially selected by Fischer.

¶ 9    In response, plaintiff maintained that the O'Hallerans hired Vinci Hamp Architects, Inc. as its architect and Wisconsin-based Fischer as the general contractor of the project.  As the general contractor, Fischer retained twelve (12) Illinois-based subcontractors and suppliers for the O'Halleran project (Mortenson Roofing Co., Inc., Tile Roofs, Inc., Interior Glass Design, Thatcher Retractable Awnings, Knoll Steel, Inc., Residential Commercial Insulation, Inc., Lake Shore Stair Co., Alarm Detection Systems, Novak and Parker Home Appliance, Hoerr Schaudt Landscape Architects, Apostrophe Design, Inc., and Interior Dynamics).  Through these relationships, Fischer communicated via emails with these Illinois-based subcontractors and suppliers.  Plaintiff argued that Fischer therefore had sufficient contacts with Illinois for the circuit court to exercise personal jurisdiction over it.  According to plaintiff, the O'Hallerans resided in Illinois and the architect—who Fischer communicated with via email—was also based in Illinois.  Plaintiff's injury also arose out of Fischer's contacts with Illinois, specifically its

contract with Mortenson Roofing, Co., Inc. Thus, but for Fischer entering into an agreement with the O'Hallerans and utilizing Mortenson Roofing Co., Inc. and Tile Roofs, Inc., plaintiff would not have been injured.

¶ 10    Plaintiff pointed to these emails and phone calls with subcontractors in Illinois (that he alleged Fischer would know were read in Illinois) as the actions which created sufficient minimum contacts thereby subjecting Fischer to personal jurisdiction. Approximately 160 pages of emails between Timothy Fischer and various Illinois subcontractors who worked on the O'Halleran project were attached to the response. A vast majority of these emails were directed to entities located in Illinois. Included among these emails were Timothy Fischer's direct communications with Mortenson Roofing Co., Inc. regarding the O'Halleran project.

¶ 11    Also attached to the response was the contract entered into between the O'Hallerans and Vinci Hamp Architects, Inc. which provided, in pertinent part, that the architect "shall" coordinate its services with those provided by the O'Hallerans' consultants and "shall" assist the owner in establishing a list of prospective contractors and hiring those contractors. The architect shall also "provide administration of the Contract between the Owner and the Contractor." The architect, however, "shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work[.]"

¶ 12    Plaintiffs additionally appended to their response the contract between the O'Hallerans and Fischer. Under the section entitled "Duties of the Contractor" the contract provided that "[a]ll work shall be done in accordance to the provisions of the plans and specifications by Vinci/Hamp Architects, Inc." The contract further provided that the owner will not have control over safety precautions in connection with the work, as this was "solely the Contractor's

responsibility." Furthermore, Fischer was to be responsible for directing and managing its employees and "other persons carrying out the contract." The contract also contained a choice of law provision which designated the law of the State of Wisconsin to govern the contract.

¶ 13    Fischer's answer to interrogatories indicated that in addition to Mortenson Roofing Co., Inc., Tile Roofs, Inc., and Interior Glass Design (companies chosen by Vinci Hamp Architects, Inc. and the O'Hallerans) Fischer hired an Illinois-based company Knoll Steel, Inc. Numerous emails between Timothy Fischer and Knoll Steel, Inc. regarding the O'Halleran home project, as well as emails between Timothy Fischer and Vinci Hamp Architects, Inc., were attached to plaintiff's response to the motion to dismiss.

¶ 14    In reply, Fischer maintained that it did not select the roofing subcontractors and therefore it did not purposely direct its activities to Illinois. Fischer maintained that all of its work was performed in Wisconsin and argued its email correspondence with Illinois-based entities was insufficient to establish minimum contacts.

¶ 15    In a written order, the circuit court denied Fischer's motion to dismiss for lack of specific personal jurisdiction. We granted Fischer's petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Feb. 26, 2010).

¶ 16                                ANALYSIS

¶ 17    On appeal, Fischer contends that the circuit court erred when it found Fischer was amenable to personal jurisdiction in Illinois where (1) the homeowners approached Fischer in Wisconsin regarding building a home there, (2) the homeowners and their architect unilaterally selected the roofing contractors, (3) plaintiff's claims arose out of and related to the parties' conduct at the Wisconsin job site, and (4) it would not be fair or reasonable to require Fischer to defend the litigation in Illinois when plaintiff chose to travel to work on the project as an

independent contractor in Wisconsin.

¶ 18                                     Standard of Review

¶ 19     The plaintiff bears the burden to establish a *prima facie* showing to exercise personal

jurisdiction over a nonresident defendant. *Aspen American Insurance Co. v. Interstate*

*Warehousing, Inc.*, 2017 IL 121281, ¶ 12. The plaintiff's *prima facie* case, however, may be

overcome if the defendant presents uncontradicted evidence defeating jurisdiction. *Russell v.*

*SNFA*, 2013 IL 113909, ¶ 28. In considering the question of personal jurisdiction, the court may

consider the plaintiff's complaint, any affidavits submitted by the parties, and any discovery

depositions. *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶ 10. Any

unrebutted allegations must be accepted as true, but any conflicts in the supporting

documentation must be resolved in the plaintiff's favor. *Zamora v. Lewis*, 2019 IL App (1st)

181642, ¶ 42. Our review when the circuit court decides a jurisdictional question solely on the

basis of documentary evidence, as was done in this case, is *de novo*. *Rios v. Bayer Corp.*, 2020

IL 125020, ¶ 16.

¶ 20                              Principles of Personal Jurisdiction

¶ 21     Illinois' long-arm statute authorizes courts in this state to exercise jurisdiction over

nonresident defendants. 735 ILCS 5/2-209 (West 2020). Relevant here is subsection (c), which

provides that "[a] court may also exercise jurisdiction on any basis or hereafter as permitted by

the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West

2020). When subsection (c) is invoked, we assess whether the nonresident defendant's contacts

with Illinois suffice to satisfy both federal and Illinois due process. *Rios*, 2020 IL 125020, ¶ 17.

Fischer, the party challenging jurisdiction, has not argued that the Illinois Constitution imposes

any greater restraints on the exercise of jurisdiction than the federal constitution. Therefore, we

consider only federal constitutional principles. See *id.*

¶ 22     "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011). State courts may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

¶ 23     Two categories of personal jurisdiction have been recognized:  general and specific jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. ___, ___; 137 S. Ct. 1549, 1558 (2017). A state court may assert general jurisdiction to hear any claims against a nonresident corporation when the corporation's "affiliations with the State are so continuous and systematic as to render" it "essentially at home" in the State. (Internal quotation marks omitted.) *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. A typical basis for general jurisdiction over a corporation would be its place of incorporation or its principal place of business. See *Daimler AG*, 571 U.S. at 137.

¶ 24     In contrast, a state may assert specific personal jurisdiction over an out-of-state defendant only "if the defendant has purposefully directed [its] activities at residents of the forum" and if "the litigation results from alleged injuries that arise out of or relate to those activities." (Internal quotation marks omitted.) *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "A State generally has a manifest interest in providing its residents with a convenient forum for redressing

injuries inflicted by out-of-state actors," and thus, its exercise of specific personal jurisdiction over a nonresident defendant that purposefully directed activities toward residents of the forum is legitimate. *Id.* at 473.

¶ 25    For a forum to exercise specific jurisdiction consistent with due process, a defendant's litigation-related "conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To establish this substantial connection, the plaintiff must establish that (1) "the defendant purposefully directed its activities at the forum state" and (2) "the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40. Under the requirement of purposeful availment, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) *Id.* ¶ 42. The requirement exists so a nonresident defendant is not required to litigate in a forum due to attenuated or random contacts or the unilateral acts of a consumer. *Burger King Corp.*, 471 U.S. at 475.

¶ 26                                The Present Case

¶ 27                                *Minimum Contacts*

¶ 28    Having set forth the general principles of law in this case, we now turn to address the arguments of the parties. Fischer argues that the circuit court cannot exercise specific jurisdiction over it as it did not purposefully avail itself of the privilege of conducting activities within Illinois and where Fischer did not initiate the business relationship. The contract between it and the O'Hallerans was initiated in Wisconsin, and the contract was agreed to between the parties over email and was to be performed in Wisconsin. Fischer further asserts it had no contract or business relationship with plaintiff and Fischer did not choose Mortenson Roofing

Co., Inc. and Tile Roofs, Inc. as subcontractors—those entities were unilaterally chosen by the O'Hallerans and the architect. According to Fischer, these unilateral acts cannot serve as minimum contacts attributed to Fischer.

¶ 29    In response, plaintiff maintains that Fischer had "more than" minimum contacts with Illinois. Plaintiff observes that the O'Hallerans are Illinois residents, the architects—who Fischer communicated with via email—are based in Illinois, and Fischer choose to utilize numerous Illinois-based suppliers and subcontractors.

¶ 30    At issue here is whether Fischer had sufficient minimum contacts with Illinois so as to justify personal jurisdiction over Fischer. For personal jurisdiction to comport with the requirements of federal due process, the defendant must have sufficient minimum contacts with the forum state so that maintaining the suit in the forum state does not offend traditional notions of fair play and substantial justice. *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 16. "The minimum contacts required for the exercise of personal jurisdiction differ depending on whether general jurisdiction or specific jurisdiction is being sought." *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 24. For specific jurisdiction, the suit must derive directly from the contacts between the defendant and the forum state. *Id.* ¶ 29. "The focus is on the defendant's activities within the forum State, not on those of the plaintiff." (Internal quotation marks omitted.) *Id.* "At a minimum, the court must find an act by which the defendant purposefully avails him or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

¶ 31    We first turn to examine *National Gun Victims Action Council v. Schecter*, 2016 IL App (1st) 152694, the case upon which Fischer primarily relies as support for its position that the circuit court erred in denying its motion to dismiss. In *Schecter*, the plaintiffs—an Illinois

resident and an Illinois not-for-profit corporation—argued that there were sufficient minimum contacts to bring the defendants within the jurisdiction of Illinois due to the ongoing business relationship between plaintiffs and defendants that was conducted via Internet-based communications and document exchanges. *Id.* ¶ 1. On review, the court found the defendants' contacts were too attenuated and that requiring the defendants to litigate in Illinois would offend traditional notions of fair play and substantial justice. In so finding, the reviewing court examined the three factors that assist in the determination of whether the defendants availed themselves of the benefits of doing business in Illinois. Regarding who initiated the transaction, the court noted that the plaintiffs first retained the defendants for public relations services in 2013 (unrelated to the transaction at issue) and then in 2014, the plaintiffs contacted the defendants in order to seek their assistance with the events at issue. *Id.* ¶ 22. Accordingly, the reviewing court found that "it was the plaintiffs, through their pursuit of defendants, who initiated the transaction at the center of this lawsuit." *Id.*

¶ 32     As to where the contract was formed, the reviewing court observed that the evidence demonstrated the parties solely engaged in communication via email and telephone calls. *Id.* ¶ 23. The record specifically contained less than 10 emails, and no evidence on the number or substance of any phone calls. *Id.* There was also no written agreement setting forth the terms of the contract. *Id.* Instead, the plaintiffs' complaint alleged that it "verbally retained" the defendant to assist with their event. *Id.* The *Schecter* court observed that the plaintiffs "could have communicated via telephone or email from anywhere in the world" in order to execute the contract. It further observed that, "[n]othing about the transaction between plaintiffs and defendants was required to take place in Illinois in order for the contract to be possible." *Id.* Thus, the court found this factor weighed in the defendants' favor.

¶ 33 Regarding the final factor, where the performance of the contract was to take place, the *Schecter* court found it also favored the defendants because no part of the contract was to be performed in Illinois. *Id.* ¶ 24. As the court found all three factors weighed in favor of the defendants, it concluded that the defendants did not avail themselves of the benefits of Illinois law when they entered into the contract with the plaintiffs. *Id.*

¶ 34 Here, we observe that Fischer primarily relies on *Schecter*, a case involving an injury arising from a breach of contract. See *id.* ¶ 7. While Fischer maintains that the three-pronged test iterated in *Schecter* is applicable in this case, we find it is not directly so. Whether this defendant has sufficiently "transacted business" in Illinois so as to avail itself of the benefits of Illinois law is not the express issue in this negligence action, it is whether Fischer has "purposely directed its activities at the forum state" and that this cause of action arose out of or relates to Fischer's contacts with Illinois. *Russell*, 2013 IL 113909, ¶ 40. Moreover, the application of such a test in this instance is inconsistent with the Supreme Court's admonishment that it had "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, [citation], or on 'conceptualistic ... theories of the place of contracting or of performance, [citation].' " *Burger King Corp.*, 471 U.S. at 478-79. Accordingly, we decline to apply the three-pronged test stated in *Schecter* and will instead follow the guidance of the Supreme Court as provided in *Burger King Corp*.

¶ 35 We note, however, that the third factor of the *Schecter* test—where the parties contemplated that performance would take place—is consistent with federal due process principles and therefore we will apply it to the case at bar. See *Burger King Corp.*, 471 U.S. at 479 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in

determining whether the defendant purposefully established minimum contacts within the forum."). In this instance, the record discloses that the O'Hallerans' property was located in Wisconsin and construction was to take place there. However, it was included in the contract between the O'Hallerans and Fischer that the Illinois-based architect would be involved in the process, and emails included in the record demonstrate that Fischer engaged numerous communications with the architect. These communications were substantive and involved Fischer reaching out to the architect for advice and instruction on how to execute the architectural plans. So while the contract on its face appeared to involve the construction of a single family home in Wisconsin, it also expressly created a relationship between Fischer and the Illinois-based architectural firm. Indeed the contract also expressly created a relationship between Fischer and Illinois-based subcontractors—even where those subcontractors were chosen by the O'Hallerans or their architect. According to the contract, under the section entitled "Duties of the Contractor," Fischer was to direct and supervise the work of the subcontractors and was solely responsible for safety precautions at the job site.

¶ 36    By agreeing to the terms of the contract with the O'Hallerans, Fischer connected itself in a meaningful way to Illinois. And while the record does not include any evidence that Fischer enticed the O'Hallerans to enter into the contract while they were in Illinois, the record does establish that Fischer received a benefit from entering into the contract with the O'Hallerans and that their mutually agreed to contract terms required Fischer to engage with the architect (an Illinois-based company) and direct many Illinois-based subcontractors. See *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 23 (finding that while the defendants did not maintain an office in Illinois it did not change the fact that they voluntarily entered into a contract creating a substantial connection with Illinois by virtue of the relationships they created). Indeed, the

record even includes email communications and contracts with Illinois-based subcontractors chosen by Fischer. Accordingly, the record demonstrates that plaintiff established the requisite minimum contacts based upon Fischer's making of a contract substantially connected with Illinois. See *Innovative Garage Door Co.*, 2012 IL App (2d) 120117, ¶ 25 (finding minimum contacts existed where the substance of the contract at issue demonstrated defendant voluntarily subjected itself to substantial obligations in Illinois).

¶ 37                    Arising Out of or Relating to Fischer's Contacts with Illinois

¶ 38    The fact there are minimum contacts in this case does not end our analysis. Plaintiff must also demonstrate that his claims arise out of or relate to Fischer's contacts with Illinois. *Burger King Corp.*, 471 U.S. at 472. The Supreme Court recently addressed this aspect of specific jurisdiction, holding that the requirement that the cause "arise out of or relate to" the defendant's contacts with the forum is not exclusively a "causation-only approach." *Ford Motor Co. v. Montana Eighth Judicial District Court*, ___ U.S. ___ (2021), 141 S. Ct. 1017, 1026 (2021). The Court explained that while "[t]he first half of that standard asks about causation" "the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* This, however, does not mean that "anything goes." *Id.* The phrase, "relates to" incorporates real limits in order to protect defendants foreign to a forum. *Id.* As acknowledged by Fischer, our state's most recent jurisprudence on this issue comports with the Supreme Court's statements in *Ford Motor Co.* In *Russell v. SNFA*, 2013 IL 113909, our supreme court recognized that "the applicable standard is lenient or flexible." *Russell*, 2013 IL 113909, ¶ 83.

¶ 39    Applying this law to the facts of the present case, we find that plaintiff's causes of action (construction negligence, negligence, and premises liability) arise out of Fischer's contacts with Illinois, specifically Fischer's contract with the O'Hallerans. But for this contract, Fischer would

not have taken on the duties to supervise the job site nor would it have had the responsibility to ensure that safety protocols on the job site were met. Accordingly, we conclude that this cause of action arises out of Fischer's contacts with Illinois-based corporations and persons. See *id.*

¶ 40    In reaching this conclusion we have considered *Alderson v. Southern Co.*, 321 Ill. App. 3d 832 (2001), cited by Fischer, and find it to be distinguishable. Not only did *Alderson* involve an analysis under the Illinois long arm statute—something that Illinois courts have found to be unnecessary where due process requirements are met—it also set forth a strict application of the "arises from" aspect of personal jurisdiction that is likely now inapplicable given the Supreme Court's statements in *Ford Motor Co.* and the Illinois supreme court's statements in *Russell*. See *Innovative Garage Door Co.*, 2012 IL App (2d) 120117, ¶ 28 ("so long as federal due process requirements are met, there is no need to consider whether the application of the factors upon which [the defendant] relies would allow an assertion of jurisdiction under an additional portion of the long-arm statute."); *Ford Motor Co.*, ___ U.S. at ____, 141 S. Ct. at 1026; *Russell*, 2013 IL 113909, ¶ 83 ("the applicable standard is lenient or flexible").

¶ 41                                     Fair Play and Substantial Justice

¶ 42    Having determined that Fischer has the requisite "minimum contacts" with Illinois, this court must also consider the reasonableness of requiring Fischer to litigate in Illinois. See *id.* ¶ 87. This requires us to address whether the exercise of personal jurisdiction over a nonresident defendant would offend traditional notions of fair play and substantial justice. *Dixon v. GAA Classic Cars, LLC*, 2019 IL App (1st) 182416, ¶ 21. Several factors guide this inquiry: (1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action. *Rios*,

2020 IL 125020, ¶ 30. As the plaintiff has established minimum contacts, it is Fischer's burden to demonstrate that litigating the dispute in Illinois would be unreasonable. *Aasonn, LLC*, 2011 IL App (2d) 101125, ¶ 25.

¶ 43    Fischer maintains that litigating this case in Illinois would offend the traditional notions of fair play and substantial justice where Wisconsin residents have an interest in deciding a case involving an accident which occurred in Wisconsin involving a construction company licensed and based in Wisconsin. Fischer further notes that plaintiff chose to travel to work in Wisconsin and that it did not hire plaintiff directly. Lastly, Fischer argues that it could not reasonably foresee being hauled into court in Illinois for an injury to an independent contractor whom it did not hire as a result of an accident that occurred in Wisconsin.

¶ 44    In response, plaintiff maintains that Fischer's reasons are not compelling and therefore it does not meet its burden. Plaintiff observes that Fischer fails to argue that Fischer would be burdened by litigating in Illinois. Plaintiff also asserts that he is an Illinois resident and Illinois has an interest in adjudicating a dispute involving an injury to one of its residents and notes that five out of the six parties in this case are domiciled in Illinois.

¶ 45    Here, the burden on Fischer of defending an action in Chicago, Illinois (less than two hours away from Wisconsin) is not too onerous, and Fischer does not argue or assert that it is. See *McNally v. Morrison*, 408 Ill. App. 3d 248, 260 (2011) (finding the duty on the Ohio defendant to defend in Illinois was not "unduly great" where the two states "are relatively close geographically"). In addition, Illinois has an indisputable interest in resolving litigation stemming from an injury to an Illinois resident that occurred while executing a bilateral contract between the O'Hallerans (Illinois residents) and Fischer. See *Innovative Garage Door Co.*, 2012 IL App (2d) 120117, ¶ 35 ("Illinois has an interest in providing a means of redress for its injured

resident."). We also find that exercising jurisdiction would further plaintiff's interest in obtaining convenient and effective relief. Lastly, the interstate judicial system's interest in obtaining the most efficient resolution of controversies also supports an exercise of jurisdiction – "it is in the interest of the several states to hold citizens of one state accountable for their actions that have a substantial impact on citizens of another state." *McNally*, 408 Ill. App. 3d at 260. There is no reason to conclude that requiring it to litigate in Illinois would offend traditional notions of fair play and substantial justice in this case.

¶ 46    In sum, we find that plaintiff has established sufficient minimum contacts between Fischer and the state of Illinois such that Fischer should reasonably anticipate being brought into court here. See *id.*

¶ 47                              CONCLUSION

¶ 48    For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 49    Affirmed.